UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

THOR CORBIN,

                              Petitioner,          **REPORT & RECOMMENDATION**

        - against -                                **14cv3200 (ER)(MHD)**

ADA PEREZ,

                              Respondent.

------------------------------------------------

TO THE HONORABLE EDGARDO RAMOS, U.S.D.J.:


    Pro se petitioner Thor Corbin seeks a writ of habeas corpus to
challenge his February 23, 2009 conviction in the New York State
Supreme Court, Bronx County, on one count of assault in the first
degree. (New York Penal Law § 120.10(1)). He is currently serving
a fourteen-year sentence based on that conviction.


    The petition, filed on April 22, 2014,[1] advances a single
claim, that petitioner was denied the effective assistance of trial
counsel when his attorney failed to move for a trial order of
dismissal pursuant to New York State Criminal Procedure Law section
290.10 on the ground that the trial evidence was not legally

---

        [1] The petition was filed in the court on April 30, 2014, but
was dated and presumptively placed in the prison mail on April
22, 2014. (Pet. 16). In accordance with the prison-mailbox rule,
we use the date on which an incarcerated litigant placed his
document in the prison mailing system. See Noble v. Kelly, 246
F.3d 93, 97 (2d Cir. 2001).

sufficient to establish that the victim had suffered a "serious physical injury," as required for first-degree assault.[2] (Pet. ¶ 12). Respondent opposes this petition. For the reasons set forth below, we recommend denying the petition.[3]

## I.   BACKGROUND

The case against Mr. Corbin stemmed from a shooting incident on the evening of August 27, 2007, when an individual identified as Mr. Corbin fired multiple shots from a passing automobile at Malcolm Scott, a high-school student, outside Mr. Scott's Bronx home. (Declaration of David P. Johnson ("Resp. Decl."), Ex. 2, Respondent's Brief on Direct Appeal, 7-10). One bullet struck Mr. Scott in the lower back, just above his buttocks, resulting in his being transported by ambulance to a trauma center, where he was treated before being released on August 29, 2007. (Id. at 10-11).

---

[2] "A person is guilty of assault in the first degree when: 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. . . ." N.Y.P.L. § 120.10.

[3] By a separate letter motion of December 1, 2014 petitioner sought a stay and abeyance so that petitioner could first exhaust his state remedies regarding a purported claim of ineffective assistance of appellate counsel and then amend his petition before us to include such an additional claim. (Motion to Hold Action in Abeyance ("Mot.") 2-3). We denied that motion by Memorandum and Order dated June 26, 2015.

Mr. Scott required a cane to assist his walking after the shooting. (<u>Id.</u> at 12).

In the wake of this incident, a Bronx Country grand jury returned an eleven-count indictment against Mr. Corbin. It charged him with attempted murder in the second degree, assualt in the first degree, assault in the second degree (two counts), criminal possession of a weapon in the second degree (two counts), reckless endangerment in the first degree, criminal possession of a weapon in the fourth degree, possession of ammunition, reckless endangerment in the second degree, and assault in the third degree. (Resp. Decl. Ex. 2 at 2-3).

**A.   Pretrial Hearing, Trial Proceedings, and Sentencing**

At a pretrial hearing testing the validity of the victim's lineup identification of his assailant, the police investigators provided evidence to support their contention that petitioner was so well known to the victim that he was "impervious to police suggestion" during an identification lineup. (Def. Decl. Ex. 2 at 15)(quoting <u>People v. Rodriquez</u>, 79 N.Y.2d 445, 452 (1992)). This evidence included a detective's testimony that Mr. Scott had had dealings with petitioner in mating their two dogs and had

3

subsequently seen petitioner very frequently in the neighborhood. (Id. at 14). The trial court (the Hon. Michael A. Gross, S.C.J.) denied Mr. Corbin's motion to suppress, holding that Mr. Scott was sufficiently familiar with Mr. Corbin that he was indeed impervious to police suggestion at the lineup. (Id. at 16-17).

The State's evidence at trial showed that petitioner and the victim were well known to each other, starting with a street meeting in which the two men had allowed their two dogs to mate. (Tr. 527:4-534:20). Mr. Scott testified that after the dogs had mated, he continued to see petitioner regularly in his neighborhood -- as often as four or five times a week -- and most commonly saw Mr. Corbin driving a silver Chevy Impala with distinctive rims and loud music playing. (Id. at 537:20-538:6). Mr. Scott further testified that they had had a subsequent conversation, in which Mr. Corbin had promised him a puppy from the litter, but claimed that he could not yet get close to the puppies because the mother was too protective. (Id. at 537:9-546:22).

On August 27, 2007, Mr. Corbin stopped and exited his car to confront Mr. Scott for purportedly maligning him to others regarding the puppies, and then punched Mr. Scott in the face. (Id. at 549:10-550:2). The two men then engaged in a fist fight, after

which they separated, with petitioner driving off and Mr. Scott walking home. (Id. at 557:1-558:18).

At least an hour after the altercation, Mr. Scott was sitting with a neighbor on the ledge of his apartment building recounting his earlier confrontation with Mr. Corbin. (Id. at 566:3-567:17). At this time, Mr. Scott testified, he observed Mr. Corbin drive past in the silver Impala two or three times. (Id. at 571:1-25). Mr. Scott testified that petitioner was well known to him and that he clearly recognized Mr. Corbin driving past him several times that night. (Id. at 574:14-25). He recounted that it was a hot evening, that petitioner was driving with the car window down, and that there was sufficient lighting on the street to identify petitioner at the wheel. (Id. at 569:1-25; 577:3-11).

Shortly after this, petitioner's distinctive Impala again passed, but this time two individuals unknown to Mr. Scott were in the car, not petitioner. (Id. at 580:16-581:4). A second car passed, and then a third car followed and slowed down significantly as it passed in front of Mr. Scott. (Id. at 581:5-13). Mr. Scott paid close attention to this third car, he explained, because it was slowing down near him, and he saw Mr. Corbin, alone, driving that car, which he described as a fuchsia Mitsubishi. (Id. at

582:2-21). He testified that he clearly recognized petitioner
driving that third car. (Id. at 585:6-18). The two men made eye
contact, whereupon, Mr. Scott testified, petitioner fired shots at
him, hitting him in the back with the third shot. (Id. 586:20-
587:4).

Mr. Scott reported that after the shooting he was transported
to a hospital where he spent three days. (Tr. 595:16-25). When he
left, because he had difficulty walking, he was given a cane.
(Id. at 598:23-599:6). Petitioner's trial took place over a year
after the shooting. During his testimony, Mr. Scott reported that
he was still "not [] able to be as active as [he] used to be
because sometimes [his] hip hurts" as a result of the injury,
although in other respects his life was "not really" affected by
the incident. (Tr. 625:12-14).

The prosecution also proffered testimony from the Emergency
Medical Technician ("EMT") who had treated Mr. Scott at the scene,
and the emergency-room physician who had treated Mr. Scott when he
was brought to the hospital on the evening of the incident. (Tr.
348-64; 767-82). The EMT testified that the victim had "minimal
bleeding" from the bullet entry wound, but that he was treated with
a protocol that assumes serious injury because it was a gunshot

injury with no exit wound. (Tr. 355:1-19). The EMT further
testified that he was "very surprised" that Mr. Scott's gunshot had
not resulted in a more serious medical outcome, because there is a
lot of opportunity for a bullet to injure vital organs and "cause
a lot of damage" as it travels through the body. (Id. at 356:6-24).

The hospital physician testified that Mr. Scott was in some
pain by his right hip, where the bullet had lodged, and that he was
provided with a cane at discharge and a rehabilitation consult
because of the pain he experienced from the wound. (Id. at 777:25-
779:6). The doctor also testified that if the angle of the bullet
had been different or if the bullet had struck in a different spot,
Mr. Scott would likely have suffered paralysis and pain from a
spinal injury, required multiple surgeries because of injury to a
vital organ, or might even have died. (Id. at 780:2-11; 782:7-9).
She concluded her testimony by stating that "I don't think he had
any life threatening injuries from the actual injury he sustained."
(Id. at 782:1-4).

During the charging conference held on January 29, 2009, the
prosecutor argued in favor of submitting to the jury not only the
attempted murder and first-degree assault charges, but also the
lesser charges of second-degree assault and attempted first-degree

assault, because there was a "potential view" of the evidence that the injury Mr. Scott sustained did not "rise to the level required by the Penal Law for serious physical injury." Mr. Corbin's attorney objected to all charges other than the attempted-murder count, in part because he did not "believe in a reasonable view of the evidence that this was a serious physical injury." (Tr. 789-92). Notwithstanding the defense counsel's objections, the judge determined that the evidence allowed for either first-degree or second-degree assault, as well as for attempted first-degree assault, depending on how the jury interpreted the evidence from the emergency-room physician regarding the severity of the victim's injury. (Id. at 792:22-793:7). Ultimately the court submitted four counts to the jury -- attempted murder in the second degree, assault in the first and second degrees, and attempted assault in the first degree. (Id. at 887:3-894:23).

At the conclusion of the charging conference, the attorney for Mr. Corbin explicitly indicated that he would defer moving for dismissal until the following day. (Tr. 797:3-6). He also implied earlier in the conference that he would make such a motion related to the sufficiency of the evidence, stating that he did "not have an argument in opposition [to assault in the first degree] if the Court denies the motion to dismiss on prima faci[e]." (Id. at

790:7-13). In the event, defense counsel made no such motion.

On February 23, 2009 the jury acquitted petitioner of attempted murder but convicted him of first-degree assault. (Tr. 925:10-13). At the apparently contentious sentencing hearing on March 23, 2009,[4] the court imposed a sentence of fourteen years incarceration on petitioner, who was a second felony offender facing a minimum of eight and a maximum of 25 years. (Resp. Decl. Ex. 2 at 32).

## B.   Direct Appeal and Collateral Challenge

On May 18, 2011, petitioner, represented by counsel, filed a direct appeal to the Appellate Division, First Department, arguing three grounds for reversal. (Resp. Decl. ¶ 6 & Ex. 2). Petitioner appealed his trial verdict on the bases (1) that the trial court had committed reversible error at the Rodriquez hearing because Mr. Scott did not have sufficient contact with Mr. Corbin to be

---

[4] Petitioner's claims do not implicate the fairness of sentencing, and the transcript for that hearing was not provided to the Court. However, respondent recounted in his opposition papers to petitioner's direct appeal, in which one point of contention was the fairness of his sentence, evidence intended to demonstrate petitioner's refusal to accept responsibility for his actions as well as evidence undermining the victim's credibility. (Resp. Decl. Ex. 3 at 31).

impervious to police suggestion when asked to confirm the identification of the shooter, (2) that the jury's implicit determination that the victim's wound amounted to "serious physical injury," as required for conviction on first-degree assault, was against the weight of the evidence, and (3) that the fourteen-year prison sentence was harsh and excessive. (Id. Ex. 1 at 15-32).

On December 13, 2011 the Appellate Division affirmed the trial verdict and sentence. The appeals court explained that the prosecution had established that the victim was sufficiently familiar with petitioner to identify him. People v. Corbin, 934 N.Y.S.2d 389, 389, 90 A.D.3d 478, 478-79 (1st Dept. 2011). The court also ruled that the verdict was not against the weight of the evidence, since the victim had established a "protracted impairment of health"[5] -- a qualifying form of injury for first-degree assault -- through his testimony that he "led a less active life than before the crime because he still suffered pain from his wound." Id. Finally, the court found no reason to question the fairness of the sentence. Id.

---

[5] A "Serious Physical Injury," under the definition in the New York Penal Code, "means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y.P.L. § 10.00 (10)(emphasis added).

On July 2, 2012 Chief Judge Jonathan Lippman of the New York Court of Appeals denied petitioner's application for leave to appeal to that court. <u>People v. Corbin</u>, 19 N.Y.3d 972, 973 N.E.2d 765 (2012).

On March 29, 2013 petitioner filed a <u>pro se</u> motion to vacate his conviction under C.P.L. § 440.10. (Pet. Ex. B). Petitioner claimed in his 440.10 motion that he had been convicted on insufficient evidence, in violation of his right to due process, and that he had been denied the effective assistance of trial counsel because his attorney had failed to move for a trial order of dismissal under C.P.L. § 290.10. (<u>Id.</u> at 4). Petitioner argued that the evidence was insufficient to convict him of first-degree assault, because the prosecution had not shown that the victim had suffered a "serious physical injury." (<u>Id.</u> at 8). According to petitioner, his attorney should have sought dismissal on that basis, and by not making the sufficiency motion, his counsel had failed to preserve that issue for appeal. (<u>Id.</u> at 5-6).

On July 31, 2013 Justice Gross denied petitioner's motion. (Resp. Decl. Ex. 6). The judge first addressed the due-process claim, explaining that the First Department had, in effect, addressed and rejected the insufficiency-of-evidence ground on

11

direct appeal when it found that the prosecution had presented sufficient evidence that the victim had suffered a "protracted impairment of health." (Id. at 3-4). Since that issue had been addressed on direct appeal, the defendant was precluded, under C.P.L. § 440.10(2)(a), from raising it on a collateral challenge. (Id. at 3). Justice Gross then rejected petitioner's claim of ineffective assistance of counsel. He first held that petitioner had "unjustifiably" failed to raise the ineffective-assistance claim on appeal, (citing C.P.L. § 440.10(2)(c)), thus barring its consideration on collateral review. (Id. at 4). Notwithstanding the procedural bar, he also evaluated the merits of the claim and found it without merit because a § 290.10 motion would have been denied, given the sufficiency of the evidence provided at trial, and because, under the standards of Strickland v. Washington, 466 U.S. 668 (1984), petitioner's trial counsel had "zealously and competently represented defendant during the pendency of his case." (Id. at 5).

On December 6, 2013 the Appellate Division, First Department, denied petitioner's application for leave to appeal from the rejection of his 440.10 motion. (Resp. Decl. Ex. 7).

C.    **This Habeas Petition**


Mr. Corbin raises one claim in his timely pleadings[6] -- that
he was denied his Sixth Amendment right to effective assistance of
counsel when his trial attorney failed to file a C.P.L. § 290.10
motion for a trial order of dismissal because the evidence relied
upon to convict him was insufficient. (Pet. ¶ 12). He argues that
his attorney's mistake led to a deprivation of his constitutional
right to due process, because this mistake meant that the
sufficiency of the evidence was not preserved for direct appeal.
Petitioner asserts that his trial counsel's error was an

---

[6] The AEDPA imposes a one-year statute of limitations, and it
runs from the date on which the state-court judgment of
conviction becomes final. 28 U.S.C. 2244(d)(1)(A). A conviction
becomes final upon the expiration of the 90-day period a
defendant has to petition for a writ of certiorari. S. Ct. R.
13(1); see Pratt v. Greiner 306 F.3d 1190, 1195 n.1 (2d Cir.
2002). The statute also provides for tolling during the pendency
of a "properly filed" collateral challenge to the conviction. 28
U.S.C. § 2244(d)(2). See, e.g., Saunders v. Senkowski, 587 F.3d
543, 548 (2d Cir. 2009).
     Mr. Corbin's conviction became final on July 2, 2012 when
the New York Court of Appeals denied his application; therefore,
the statute of limitations began to run 90 days later, on
September 30, 2012. Mr. Corbin filed his section 440.10 motion on
March 29, 2013, which tolled his one-year clock for 252 days
during the pendency of his motion until on December 6, 2013 when
the Appellate Division denied his appeal. See, e.g., Ramos v.
Walker, 88 F. Supp. 2d 233, 235 (S.D.N.Y. 2000). Following the
decision by the Appellate Division on his section 440.10 motion,
petitioner had until June 9, 2014 -- 252 days after the original
expiration date of September 30, 2013 -- to file a timely
petition with this court.

"egregious" lapse, given the necessity of a 290.10 motion under New York criminal procedure. (Pet. Mem. 2-3, 14). Moreover, petitioner argues, his trial counsel's failure was not a strategic error, but a true "blunder," because his attorney had represented to the court on January 29, 2009, just before court adjourned for the day, that he would make such a motion the next day. (Id. at 4). (See Tr. 797:3-6). Petitioner suggests that his counsel "lost sight of the motion and failed to file [it], contrary to his affirmed intentions of making the motion for trial order of dismissal." (Pet. Mot. 4).

Petitioner asserts that if his trial counsel had made the 290.10 motion, he would have argued that the victim had not sustained a "serious physical injury," which is a required element of first-degree assault. (Id.). Petitioner cites New York caselaw to support his contention that an injury of the type that the prosecution presented in its evidence does not satisfy the requirement for a first-degree-assault conviction. (Id. at 10). Petitioner also recounts testimony presented at trial to suggest that Mr. Scott's injury did not meet the required standard. (Id. at 6-9, 13-14). Additionally, petitioner suggests "that the prosecution on two instances conceded" that the evidence did not support "a substantial risk of death nor a serious physical injury." (Id. at 10).

14

Respondent opposes the petition on several grounds: (1) that he did not exhaust this claim in state court, (2) that the claim is procedurally defaulted because his 440.10 motion raising the claim was denied on an independent and adequate state-law basis -- that he had not raised the Sixth Amendment claim on direct appeal and thus that it was barred from consideration under C.P.L. § 440.10(2)(c) -- and (3) that his claim is in any event meritless, because the state court's denial of his ineffective-assistance claim was not contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668 (1984). (Resp. Oppos. 5-9).

Petitioner counters that he properly exhausted his state remedies when he raised the ineffective-assistance claim in his 440.10 motion, and that in any event, he faced a dilemma because of the nuanced differences in the New York caselaw addressing the question of whether to raise such a claim on direct appeal or in a collateral motion to set aside a verdict. (Petitioner's Reply to Respondent's Declaration and Memorandum of Law ("Traverse") 2-5). He also argues that the Appellate Division's consideration of the weight of the evidence was not tantamount to a consideration of the sufficiency of the evidence, as respondent contends. (Id. at 6).

15

## II. ANALYSIS

Respondent asserts two procedural defenses as well as a merits-based argument. We first address the procedural issues raised, and conclude that petitioner's claim is procedurally barred. We then consider, in an alternative assessment, the merits of petitioner's Sixth Amendment Claim.

### A.   Procedural Issues Raised

#### 1.   Exhaustion

Respondent notes that on petitioner's direct appeal, he did not assert his current challenge to his trial attorney's performance, and instead raised the issue on his subsequent 440.10 motion. According to respondent, this mode of presentation reflects a failure to exhaust state-court remedies, thus precluding Mr. Corbin from having the claim addressed here on its merits. (Resp. Mem. 3-5).

As respondent also notes, however, under the habeas statute the court need not rest its decision on an asserted exhaustion defense if the claim is substantively meritless. 28 U.S.C. § 2254(b)(2). See, e.g., McCray v. New York, 573 F. App'x 22, 23 (2d Cir. 2014); Abuzaid v. Mattox, 726 F.3d 311, 321-22 (2d Cir. 2013).

That being the case here, we choose to bypass the issue.[7]

## 2.   Procedural Bar Standards

The availability of federal habeas merits review depends on whether the state courts have passed on the merits of a petitioner's federal claim or relied on a state procedural ground to dismiss the claim. <u>Jimenez</u>, 458 F.3d at 145. We must "refuse to review" a claim that has been denied by a state court on proper procedural grounds, "[a]ssuming that the independent state procedural bar is adequate to support the judgment and not excused by a showing of either cause and prejudice or a fundamental miscarriage of justice." <u>Id.</u> at 145 & n.18 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991)); <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Cotto v. Herbert</u>, 331 F.3d 217, 239 & 247 (2d Cir. 2003)).

---

[7] We note as well that even if a petitioner has failed to exhaust a claim, the habeas court must resort to a procedural-bar analysis if the petitioner no longer has an available remedy in state court. <u>See</u>, <u>e.g.</u>, <u>McKethan v. Mantello</u>, 292 F.3d 119, 122 (2d Cir. 2002) (citing <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991)). That is surely the case here, since petitioner may not pursue a second direct appeal, <u>see</u> <u>Williams v. Marshall</u>, 2011 WL 2175810, *9 (S.D.N.Y. Mar. 30, 2011), <u>adopted</u>, 2011 WL 2175806 (S.D.N.Y. June 2, 2011)(citing <u>Jimenez v. Walker</u>, 458 F.3d 130, 149 (2d Cir. 2006)), and he cannot obtain merits review of the Sixth Amendment claim by a 440.10 motion for the procedural reasons stated by Justice Gross in denying his original motion to vacate.

In assessing this threshold issue, we first evaluate "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances," to determine whether the state court's decision was "(1) fairly appearing to rest primarily on federal law or to be interwoven with federal law or (2) fairly appearing to rest primarily on state procedural law." Clark v. Perez, 510 F.3d 382, 394 (2d Cir. 2008)(quoting Jimenez, 458 F.3d at 145 & n. 16). We look to the last state court decision, and "[u]nless this last decision clearly relies on a state procedural ground, the claim was decided on the merits and AEDPA deference applies." Id.

If the last state court to address a federal-law claim disposes of it on a "state law ground that is 'independent of the federal question and adequate to support the judgment,'" Cone v. Bell, 556 U.S. 449, 465 (2009), a federal habeas court may not review that claim unless the petitioner demonstrates both cause for his default and prejudice, or else establishes that a failure to address the claim would constitute a fundamental miscarriage of justice. See, e.g., id. (quoting Coleman, 501 U.S. at 729); see also Jimenez, 458 F.3d at 136 (2d Cir. 2006) (citing Harris, 489 U.S. at 260). A state procedural rule can qualify as an adequate and independent state-law ground. See Harris, 489 U.S. at 260-61.

18

To be independent, the state-law holding must rest on state law that is not "'interwoven with the federal law.'" <u>Jimenez</u>, 458 F.3d at 137 (quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' . . . reliance on state law must be 'clear from the face of the opinion.'" <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (quoting <u>Coleman</u>, 501 U.S. at 732, 735). When determining whether we may entertain a claim, we "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" <u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) (quoting <u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000)).

In this regard, even if the appellate court rejects the claim as unpreserved and then, in the alternative, notes that if it had reviewed the merits it would have rejected the claim, the ruling is deemed, for this purpose, to have rested on the state-law procedural ground. <u>See</u> <u>Murden v. Artuz</u>, 497 F.3d 178, 191 (2d Cir. 2007) ("Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the

petitioner's procedural default.") (citing <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005)); <u>cf.</u>, <u>e.g.</u>, <u>Bell v. Miller</u>, 500 F.3d 149, 155 (2d Cir. 2007) (state court's "contingent observation" is not an "adjudication on the merits" for purposes of habeas review).

As for the requirement of adequacy, the state procedural rule must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." <u>Murden</u>, 497 F.3d at 192 (quoting <u>Monroe</u>, 433 F.3d at 241); <u>see Lee v. Kemna</u>, 534 U.S. 362, 376 (2002); <u>Cotto</u>, 331 F.3d at 239 (citing <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999)). However, principles of comity caution against categorizing a state procedural rule as inadequate "lightly or without clear support in state law." <u>Garcia</u>, 188 F.3d at 77 (internal quotation marks omitted).

If the state court relied on an independent and adequate ground, it is incumbent upon petitioner to meet one of two recognized exceptions to procedural bar. Under procedural-bar rules, we may not review the merits of the claim unless petitioner can overcome his procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [establishing] . . . that

20

failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Fama</u>, 235 F.3d at 809.

To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example, by showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (citing <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984), and quoting <u>Brown v. Allen</u>, 344 U.S. 443, 486 (1953)). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. <u>See</u> <u>Restrepo v. Kelly</u>, 178 F.3d 634, 640 (2d Cir. 1999). However, "[a] defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 91 (2d Cir. 2001). Moreover, a petitioner may not assert ineffective assistance as a basis for cause unless he has raised that ineffectiveness as an

independent claim in state court and exhausted his state-court remedies on that Sixth Amendment claim. Id. (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)).

The second exception -- that failure to review petitioner's claims would result in a fundamental miscarriage of justice -- is reserved for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; accord Sawyer v. Whitley, 505 U.S. 333, 339 n.6 (1992). To establish "actual innocence," petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998)(quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). Moreover, the petitioner must support his claims "'with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or actual physical evidence -- that was not presented at trial.'" Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004)(quoting Schlup, 513 U.S. at 324); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

### 3. Petitioner's Claim Should be Found Procedurally Barred from Habeas Relief

Petitioner's claim is barred to us because Justice Gross disposed of plaintiff's claim on an independent and adequate state-law ground. Justice Gross determined that his claim of ineffective assistance was procedurally barred from his review under N.Y.C.P.L. § 440.10(2)(c) because it had not been raised on direct appeal. (Resp. Decl. Ex. 6 at 4). That finding rested solely on the application of state procedural law to petitioner's claim, and hence his ruling is "independent." His finding in the alternative that the claim was without merit under federal law does not change this outcome. See Murden, 497 F.3d at 191.

Justice Gross's procedural ruling is also "adequate," since section 440.10(2)(c) precludes review of claims that could have been asserted on direct appeal, and Mr. Corbin's Sixth Amendment claim plainly was reviewable on appeal since it rested solely on the evidence in the record concerning the seriousness of Mr. Scott's injury. Indeed, the New York courts have held, with some consistency, that Sixth Amendment claims based on a trial attorney's failure to move to dismiss for insufficient evidence are reviewable on direct appeal. See, e.g., People v. High, 119 A.D.3d 959, 959, 989 N.Y.S.2d 873, 874 (2d Dep't 2014); People v. Knapp,

79 A.D.3d 1805, 1807, 913 N.Y.S.2d 470, 472 (4th Dep't 2010);
People v. Bassett, 55 A.D.3d 1434, 1437-38, 866 N.Y.S.2d 473, 477-
78 (4th Dep't 2008); People v. Coles, 43 A.D.3d 1424, 1425, 842
N.Y.S.2d 654, 654-55 (4th Dep't 2007); People v. Acevedo, 44 A.D.3d
168, 172, 841 N.Y.S.2d 55, 58 (1st Dep't 2007).


Petitioner seeks to demonstrate that his claim should be
treated as a cause-and-prejudice exception because he was caught in
"an unbreakable catch-22" in failing to assert his claim of
ineffective assistance of counsel on direct appeal. (Traverse 3).
Petitioner's argument is unavailing. He did not provide any
evidence external to the trial record in support of his 440.10
motion, and section 440.10(2)(c) clearly bars claims that are based
solely on the trial record. Moreover, his specific criticism of his
attorney was in fact based purely on the trial evidence of Mr.
Scott's injury and his attorney's conceded failure to seek
dismissal. In short, petitioner faced no dilemma -- if he had
evidence of his attorney's failures outside the trial record, he
should have provided that evidence in support of his 440.10 motion.
And petitioner's attempt to analogize from the Supreme Court's
reasoning in Massaro v. United States, 538 U.S. 500, 507-08 (2003),
does not persuade us otherwise. (Traverse 4). The Second Circuit
has explained that section 440.10 was designed to prevent its use

24

as a substitute for claims that could have been raised on direct appeal -- the statute requires only that claims "unjustifiably" neglected on direct appeal be denied. Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003) (citing N.Y. Crim. P.L. § 440.10(2)(c)). The Sweet Court concluded that Massaro did not disturb the principle that when the evidence for a claim is fully presented in the trial-court record, the claim must be made on direct appeal. Id. ("Nothing in Massaro alters our view that it remains inappropriate and inefficient to allow state defendants to bypass state courts on the substance of state rules, and bring federal habeas challenges without the benefit of state decisions on those state rules."). The holding in Sweet applies here as well -- petitioner has proffered no evidence of his trial counsel's purported ineffectiveness other than what appears in the trial record.

Petitioner also cannot show cause based on the failure of his appellate attorney to assert on his direct appeal the Sixth Amendment claim that he now pursues in this court. As noted, although demonstration of ineffective representation may provide a basis for showing cause to cure a procedural default, the petitioner must first assert that ineffectiveness as an independent claim in state court and exhaust his remedies with respect to it.

See <u>Aparicio</u>, 269 F.3d at 91. Petitioner has not pursued a Sixth Amendment claim, by way of a <u>coram</u> <u>nobis</u> application, in the Appellate Division based on his appellate lawyer's failure to assert a claim of ineffective trial counsel.[8] Necessarily, then, he cannot demonstrate cause on this basis.

Even if petitioner had demonstrated cause, he could not demonstrate prejudice -- in this case, that the failure of his trial counsel to preserve the sufficiency-of-the-evidence claim likely altered the course of his criminal proceeding. See <u>Aparicio</u>, 269 F.3d at 91 ("A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel."). The Appellate Division addressed the evidence pertaining to Mr. Scott's injury and concluded that it satisfied the statutory requirement that the defendant have inflicted "serious injury" on his victim. <u>Corbin</u>, 90 A.D.3d at 479,

--------

[8] We note that petitioner has recently asked to stay this proceeding to allow him to assert such a claim now before the state courts. For reasons summarized in an accompanying Memorandum and Order, we are denying that application, both because petitioner fails to show good cause for his failure to exhaust that claim before commencing his habeas proceeding and because pursuit of such a theorized claim would obviously be futile. Memorandum and Order, June 26, 2015.

934 N.Y.S.2d at 390. That being the case -- and Justice Gross concurred in that conclusion when denying Mr. Corbin's 440.10 motion (Resp. Decl. Ex. 6 at 4-5) -- necessarily a trial motion to dismiss on that ground would have been denied, and an appellate argument to the same effect would have met the same fate. Thus, petitioner cannot demonstrate prejudice. Justice Gross evaluated the performance of trial counsel with regard both to his specific failure to move for a trial order of dismissal and to the totality of the circumstances, and found that "counsel provided defendant with meaningful representation throughout the trial." (Id.). Moreover, the Appellate Division held that the evidence sufficed to establish serious injury. Corbin, 934 N.Y.S.2d at 390, 90 A.D.3d at 479.  In short, there is no clear prejudice that could overcome this procedural bar.

Finally, petitioner cannot excuse his default by showing that a failure to consider his claim would constitute a fundamental miscarriage of justice. Even if he were to argue, in substance, that he is innocent of first-degree assault, his argument would fail since he offers no new evidence -- whether persuasive or not -- suggesting his innocence.

In sum, petitioner's claim is procedurally barred from our

review.


**B.   The Merits of Petitioner's Sixth Amendment Claim**


Even if petitioner's claim were not procedurally barred, it would have to be rejected as without merit. Petitioner's single claim before us is that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights when his trial attorney failed to file a 290.10 motion and thereby preserve a claim that petitioner's conviction was not supported by sufficient evidence. For the reasons explained below, this claim is plainly groundless.


**1.   Standards for Merits Review**


The petitioner may obtain relief on the merits of a claim only if the state court's ruling on those merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28

28 U.S.C. § 2254(d). <u>See, e.g.</u>, <u>Bell v. Cone</u>, 535 U.S. 685, 693 94 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 13 (2000) (O'Connor, J., concurring); <u>Besser v. Walsh</u>, 601 F.3d 163, 178 (2d Cir. 2010), <u>vacated on other grounds sub nom.</u> <u>Portalatin v. Graham</u>, 624 F.3d 69 (2d Cir. 2010) (en banc); <u>Howard v. Walker</u>, 406 F.3d 114, 121 22 (2d Cir. 2005).

Clearly established federal law "'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.'" <u>Howard</u>, 406 F.3d at 122 (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)). "[A] decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 413).

As for an "unreasonable application" of settled law, the Supreme Court has observed that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's

decisions [and] unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 410-13. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 102. Therefore, a federal habeas court has the limited "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." <u>Id.</u>

As for state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). <u>See also Rice v. Collins</u>, 546 U.S. 333, 338 39 (2006); <u>Richard S.</u>, 589 F.3d at 80

81; <u>McKinney v. Artuz</u>, 326 F.3d 87, 101 (2d Cir. 2003). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller v. Cockrell</u>, 537 U.S. 322, 340 (2003). Indeed, the Supreme Court has held that "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010). In short, we apply a "highly deferential" standard in reviewing a state court's decision on a federal constitutional issue. <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011)(per curiam).


**2.   The Claim of Ineffective Assistance of Trial Counsel**


When a habeas petitioner asserts a claim of ineffective assistance of counsel, the court must apply a "doubly deferential standard of review" -- one "that gives both the state court and the defense attorney the benefit of the doubt." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013)(quoting <u>Cullen v. Pinholster</u>, 134 S. Ct. 1388, 1403 (2011)). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." <u>Burt</u>, 134 S. Ct. at 16

31

(quoting <u>Harrington</u>, 562 U.S. at 102). Our review is also highly deferential because "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." <u>Id.</u> at 18. The burden "rests squarely on the defendant" to overcome the "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" <u>Id.</u> at 17 (quoting <u>Strickland</u>, 466 U.S. at 687-90).

Petitioner has not overcome this strong presumption that his trial counsel's performance fell below the <u>Strickland</u> standard for reasonable professional assistance. The <u>Strickland</u> test requires the defendant to prove "both that his attorney was ineffective and that the attorney's errors resulted in prejudice to the defendant." <u>Rosario v. Ercole</u>, 601 F.3d 118, 123 (2d Cir. 2010)(citing <u>Williams</u>, 529 U.S. at 363). Generally, to demonstrate ineffective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Brown v. Artuz</u>, 124 F.3d 73, 79 (2d Cir. 1997)(quoting <u>Strickland</u>, 466 U.S. at 687); <u>see</u> <u>also</u> <u>Larcier v. United States</u>, 2010 WL 4118100, *1 (S.D.N.Y. Oct. 19, 2010). As summarized in <u>Brown</u>:

32

> To satisfy the first, or "performance," prong, the defendant
> must show that counsel's performance was "outside the wide
> range of professionally competent assistance," and to satisfy
> the second, or "prejudice," prong, the defendant must show
> that "there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceeding
> would have been different."

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694); accord,

e.g., Smith v. Spisak, Jr., 558 U.S. 139, 155 (2010); Palacios v.

Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d

48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d

Cir. 2004).


Under the highly deferential Strickland standard, a habeas

court weighing an ineffective-assistance claim must "determine

whether, in light of all the circumstances, [counsel's] identified

acts or omissions were outside the wide range of professionally

competent assistance." Strickland, 466 U.S. at 690; accord, e.g.,

Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Loliscio v. Goord,

263 F.3d 178, 192 (2d Cir. 2001). The burden of proving prejudice

is equally onerous. As noted, the petitioner must demonstrate "a

reasonable probability" that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.

Aparicio, 269 F.3d at 95 (citing Strickland, 466 U.S. at 687).


Tactical decisions and even strategic or tactical errors are

33

also ordinarily not grounds for finding a constitutionally defective representation, because a habeas petitioner is bound by the agency of his attorney, "absent extraordinary circumstances." Murray, 477 U.S. at 485-86.

Here, the trial transcript demonstrates that petitioner's counsel indicated to the judge that he intended to make a 290.10 motion, but then failed to do so. (Tr. 797:3-6). By not making that motion, petitioner's trial counsel failed to preserve for appeal the issue of whether petitioner was convicted by sufficient evidence. See, e.g., Jelinek v. Costello, 247 F. Supp. 2d 212, 270-71 (E.D.N.Y. 2003). Such a failure can, under some circumstances, rise to the level of constitutionally defective representation. See id. (citing People v. Hoyte, 185 Misc. 2d 587, 593, 714 N.Y.S.2d 420, 426 (Sup. Ct. 2000), aff'd, 294 A.D.2d 263, 741 N.Y.S.2d 873 (1st Dept. 2002)). In Jelinek, the trial counsel was found to have performed below the constitutional standard because there was no evidence at all regarding one of the incidents charged, and yet he failed to object. Id. at 293, And in Hoyte, the trial attorney's was constitutionally defective because counsel failed to ensure that the jury was instructed to evaluate each element of the crime charged -- a mistake of law that the court determined was "extremely troubling" -- and then compounded his error when the

34

attorney failed to preserve the issue for appeal. 185 Misc. 2d at 592, 714 N.Y.S.2d at 425.

In this case, the Appellate Division expressly found that the evidence sufficed to justify the jury's finding that the victim had suffered a serious physical injury in the form of a "protracted impairment of health." <u>Corbin</u>, 934 N.Y.S.2d at 389, 90 A.D.3d at 479.[9] Thus, even if petitioner's trial counsel had preserved the objection, it would not have prevailed in state court. Moreover, the conclusion of the Appellate Division in this respect cannot be seriously challenged. As a mid-level appellate court, its interpretation of the state statutory requirement for a serious physical injury is presumptively binding on our Court. <u>See</u>, <u>e.g.</u>, <u>Parron v. Quick</u>, 869 F.2d 87, 90 (2d Cir. 1989); <u>Rincon v. Burge</u>, 2010 WL 6789121, *14 (S.D.N.Y. Sept. 8, 2010). <u>See also Universal Accupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.</u>, 370 F.2d 259, 265 (2d Cir. 2004). In addition, the appellate court's holding is consistent with a body of New York caselaw, which further underscores the fact that petitioner cannot show the

---

[9] The New York Penal Law defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted lessor impairment of the functions of any bodily organ. N.Y. Penal Law § 10.00(10).

prejudice required for him to prevail on his Sixth Amendment claim. See, e.g., People v. Torrero, 31 A.D.3d 672, 673, 818 N.Y.S.2d 288, 289-90 (2d Dep't 2006); People v. Graham, 297 A.D.2d 579, 579-80, 747 N.Y.S.2d 171, 171-72 (1st Dep't 2002); People v. Rosa, 112 A.D.3d 551, 551, 977 N.Y.S.2d 250, 250 (1st Dep't 2014). Compare People v. Ham, 67 A.D.3d 1038, 1039, 889 N.Y.S.2d 110, 112 (3d Dep't 2009).

Petitioner mistakenly asserts, in support of his claim, that the prosecutor admitted that the injury to Mr. Scott was not serious. (Pet. Mot. 10). In fact, during the charging conference, the prosecutor stated, in support of adding the lesser included charges, that there was a "possible view" of the evidence that would allow a jury to find that the injury did not meet the legal definition of "serious." (Tr. 789: 16-22, 792:19-21). Given the context in which these statements were made, they cannot reasonably be interpreted as admissions by the prosecution that its evidence was insufficient to convict petitioner of first-degree assault.

In addition, Justice Gross, who presided over the trial and reviewed petitioner's 440.10 motion raising the Sixth Amendment claim, determined that "counsel zealously and competently represented defendant during the pendency of his case." (Resp.

Decl. Ex. 6 at 5). AEDPA deference and our own reading of the record provide no basis on which to set aside the state court's opinion on this matter.

### 3. Sufficiency of the Evidence

Even if we pierced through the Sixth Amendment claim and evaluate it as an implicit due-process claim based on the sufficiency of the evidence, we would find no constitutional deficiency in petitioner's conviction.

A conviction based on insufficient evidence violates the Due Process Clause of the Fourteenth Amendment. <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979). As the Court stated in <u>Jackson</u>, it is

> an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof -- defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

<u>Id.</u> The central inquiry on a challenge to the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable

37

doubt." Id. at 319 (emphasis in original).

This standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012); see also Santone v. Fischer, 689 F.3d 138, 148 (2d Cir. 2012); Harnett v. Conway, 2014 WL 6390285, *4 (S.D.N.Y. Nov. 17, 2014); Graham v. Lape, 476 F. Supp. 2d 399, 403 (S.D.N.Y. 2007) ("All permissible inferences are drawn in favor of the prosecution, the verdict can be based entirely on circumstantial evidence, and the government is not required to refute every possible hypothesis supporting the defendant's innocence."). In other words, a court will "defer[] to the jury's assessments of the witnesses' credibility." United States v. Arena, 180 F.3d 380, 391 (2d Cir. 1999) (citing cases), abrogated in part on other grounds by Scheindler v. Nat'l Org. for Women, Inc., 537 U.S. 393 (2003).

In sum, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." Coleman, 132 S.Ct. at 2062

(internal quotations omitted). Finally, when the insufficient-evidence claim arises from a state conviction, a habeas court "must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999); Piniero v. Conway, 2011 WL 1226300, *2 (S.D.N.Y. Mar. 31, 2011).

Under the New York Penal Law, first-degree assault occurs when an assailant "[w]ith intent to cause serious physical injury to another person, [] causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument. . . ." N.Y.P.L. § 120.10. As noted, "'[s]erious physical injury' means physical injury which creates a substantial risk of death, or which causes . . . protracted impairment of health. . . ." Id. at § 10.10. Here, the prosecution presented evidence from the victim himself that he experienced pain and limitations to his mobility from the bullet wound as long as 17 months after the shooting, and testimony by the EMT and emergency-room physician that the wound nearly missed causing further injuries, up to and including death. The jury was left to evaluate that evidence and determine whether the victim's injury met the definition of "serious," and thus warranted a conviction for first-degree assault.

Under these circumstances, petitioner cannot carry his heavy

burden to demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324. Two state courts -- the appeals court and the trial court hearing the 440.10 motion -- evaluated petitioner's assertion that the evidence did not support his conviction, and both courts determined that the evidence did establish, under New York law, a "protracted impairment of health" for the victim. <u>Corbin</u>, N.Y.S.2d at 389, 90 A.D. at 479; Resp. Decl. Ex. 6 at 5. There is nothing objectively unreasonable about this determination, and hence there is no basis to undo the state-court conviction.

## CONCLUSION

We conclude that petitioner's claim is procedurally barred from review and in any event without merit. We therefore recommend that the writ be denied and the petition dismissed. We further recommend denial of a certificate of appeal, as petitioner fails to raise any issue worthy of appellate review pursuant to 28 U.S.C. § 2253. See <u>Flemming v. New York</u>, 2013 WL 4831197, *14-15 (S.D.N.Y. Sept. 10, 2013)("To warrant the issuance of a certificate of appealability, 'petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further.'")(quoting <u>Middleton v.</u>
<u>Attorneys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005)(per curiam)).


        Pursuant to Rule 72 of the Federal Rules of Civil Procedure,
the parties shall have fourteen (14) days from this date to file
written objections to this Report and Recommendation. Such
objections shall be filed with the Clerk of the Court and served on
all adversaries, with extra copies to be delivered to the chambers
of the Honorable Edgardo Ramos, 40 Foley Square, Room 410, and to
the chambers of the undersigned, 500 Pearl Street, Room 1670, New
York, New York, 10007. Any requests for an extension of time for
filing objections must be directed to Judge Ramos. Failure to file
timely objections may constitute a waiver of those objections both
in the District court and on later appeal to the United States
Court of Appeals. <u>See</u> <u>Thomas v. Arn</u>, 470 U.S. 140, 150 (1985);
<u>Small v. Secretary of Health and Human Services</u>, 892 F.2d 15, 16
(2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),
6(e).

Dated:     New York, New York
           June 26, 2015

                              Respectfully submitted,


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Report and Recommendation have been sent
today to:

David Peter Johnson, Esq.
Bronx County District Attorney's Office
198 East 161st Street
Bronx, NY 10451

Mr. Thor Corbin
09A1797
Downstate Correctional Facility
Red Schoolhouse Road
Fishkill, NY 12524